**KERR–McGEE REFINING CORPORATION, Plaintiff–Appellant, Cross–Appellee,**

v.

**M/T TRIUMPH, her boilers, tackle, etc., Defendant–Appellee,**

**Triumph Tankers, Ltd., Defendant–Appellee, Cross–Appellant.**

**Nos. 820, 978, Dockets 90–7778, 90–7800.**

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1991.

Decided Jan. 28, 1991.

John P. Vayda, New York City (Nourse & Bowles, Maria L. Alonso, Peter T. Jensen, of counsel), for plaintiff-appellant, cross-appellee.

R. Scott Ervin, New York City (Burlingham, Underwood & Lord, Joseph C. Smith, of counsel), for defendant-appellee, cross-appellant.

Before FEINBERG, NEWMAN and McLAUGHLIN, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Kerr–McGee Refining Corp. (Kerr–McGee) appeals from a judgment entered in accordance with an order of the United States District Court for the Southern District of New York, William C. Conner, J., dated July 10, 1990, 740 F.Supp. 288, vacating an arbitration panel's Decision and Final Award, dated March 28, 1990, which awarded Kerr–McGee treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68. The principal question on appeal is whether the arbitration panel exceeded its authority under a voyage charter party (the Charter) because the panel considered evidence of voyages not covered by the Charter as proof of the "pattern" and "enterprise" elements of a RICO violation. Judge Conner's July 1990 order (and the subsequent judgment) also confirmed a Partial Final Award issued by the arbitration panel on September 7, 1988. Defendant Triumph Tankers, Ltd. (Triumph) cross-appeals from that portion of the district court's judgment. For reasons given below, we reverse the judgment with respect to the March 1990 Final Award and affirm with respect to the September 1988 Partial Final Award.

## Background

The Charter was entered into in March 1984 by Kerr–McGee, as charterer, and Triumph, as owner of the vessel. Later that month, Triumph loaded 539,999 net barrels of crude oil at a terminal in Scotland, and this amount was incorporated into a bill of lading that showed Kerr–McGee as consignee at Corpus Christi, Texas. When the vessel arrived at Corpus Christi and the oil was discharged, Kerr–McGee's measurements showed that only 528,060.65 net barrels had been received from the vessel. Kerr–McGee accordingly alleged short delivery of cargo and withheld freight in the amount of $213,000 to cover the alleged shortage.

Triumph then sought arbitration to recover the balance of the freight withheld by Kerr–McGee, since the Charter required that "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration." Kerr–McGee subsequently paid the freight balance, but counterclaimed in the arbitration for damages resulting from the alleged short delivery.

During the course of the arbitration, Kerr–McGee obtained information, including numerous detailed photographs of the

vessel taken while it was being dismantled for scrap metal in China, that showed that a permanent concealed tank had been built into one of the vessel's cargo tanks. The vessel had been further modified to allow oil to be transferred from the cargo tank to the concealed tank. In the words of the arbitration panel, "[w]hat appeared at first sight to be a fairly simple case of a short delivery developed over the seven hearings into a complex matter involving allegations of cargo stealing by this vessel, as well as other vessels operated by the same managers, perjury by the vessel's Chief Engineer, alterations to the Deck and Engine logs, etc." Because of the alleged theft of cargo, Kerr–McGee amended its claim in arbitration to recompute its damages and to seek damages under RICO.

In September 1988, the three-person arbitration panel issued a Partial Final Award in favor of Kerr–McGee for the value of cargo short delivered, together with interest. The arbitrators deferred decision on a number of other issues, including Kerr–McGee's RICO claim, its alternative claim for punitive damages and its claim for attorneys' fees and costs.

In March 1990, the arbitration panel issued its Decision and Final Award, with one arbitrator dissenting. The majority found, among other things, that the modification to the vessel's cargo tank existed at the time of the chartered voyage; that the modification was permanent and was designed to divert cargo on more than one occasion; that 7,497.4 net barrels of Kerr–McGee's cargo were converted in violation of 18 U.S.C. § 659, which deals with theft from interstate or foreign shipments; that there was evidence of four other substantial shortages in crude oil cargo carried by the vessel over a two-year period; that the managing company of the chartered vessel also managed, but did not own, four other vessels in the same group as the chartered vessel; that one of the vessels was found to have converted crude oil cargo in a similar manner during a voyage; and that three of the vessels were suspected of doing so. The majority accordingly concluded that Triumph had converted Kerr–McGee's cargo through a pattern of racketeering and awarded under RICO treble damages, costs and attorneys' fees, all totalling $512,520.10.

Kerr–McGee then moved in the district court to confirm the Partial Final and Final Arbitration Awards, and Triumph cross-moved to vacate the awards. The district court confirmed the Partial Final Award after finding that it was not time-barred, but vacated the Final Award on the ground that the arbitration panel exceeded its power when it relied upon occurrences on other voyages not covered by the Charter in order to find a "pattern" and "enterprise" as required by RICO. This appeal and cross-appeal followed.

## Discussion

### A. *The Final Award*

■ There is no longer any doubt that a RICO claim is arbitrable. See *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 242, 107 S.Ct. 2332, 2345, 96 L.Ed.2d 185 (1987). Thus, whether the arbitration panel exceeded its authority under the Charter in imposing RICO liability on Triumph turns solely on the issue of whether the claim was nonarbitrable because it was beyond the intended scope of the arbitration agreement. In deciding this issue, we are guided by the principle that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, [including problems concerning] the construction of the contract language itself." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Kerr–McGee argues that the district court did not adhere to this principle when it determined that the RICO claim was outside the scope of the Charter. We agree.

The district court vacated the Final Award on the ground that because the parties agreed to arbitrate only those claims "arising out of" the Charter, the arbitration panel exceeded its authority when it relied on episodes occurring on voyages not covered by the Charter to establish the predicate acts necessary for a

RICO violation. We believe that this was too restrictive a construction of the parties' intent as expressed in the Charter that *"[a]ny and all differences and disputes of whatsoever nature* arising out of this Charter shall be put to arbitration" (emphasis added). The dispute here was directly based on a shortage in the fuel oil delivered at the end of the single voyage covered by the Charter. It is true that Kerr–McGee thereafter obtained evidence that the shortage was intentional and part of a prior practice. This evidence, however, did not alter the facts that the dispute arose "out of" the Charter and the damages were inflicted during Triumph's performance under it. Even though the arbitration panel looked at other voyages, it did not determine the liability of a person not party to the contract, as was the case in *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299 (2d Cir.), cert. denied, 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963), relied on by Triumph. The award here imposes liability only on Triumph, a party to the agreement to arbitrate.

Citing *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir.1987), Triumph argues that the RICO claim was nonarbitrable. *Genesco* involved a plaintiff that had purchased fabric from the defendants over the years, and made each purchase on a written purchase order form containing an arbitration provision. Plaintiff asserted a RICO claim, and the *Genesco* court held the claim arbitrable because "the predicate acts of [plaintiff's] RICO claim all derive from the parties' transactions under the sales agreements." Id. at 848. Triumph points out that the predicate acts here, in contrast, were not performed under contracts between the parties at all, much less under contracts containing an arbitration clause.

We do not believe, however, that *Genesco* determines the result here, although, if anything, that decision supports the position taken by Kerr–McGee. The panel in that case did look to transactions under a number of sales agreements in determining that a RICO claim could be brought under them, even though each sales agreement provided only for arbitration of "[a]ll claims and disputes of whatever nature arising under *this contract.*" 815 F.2d at 845 (emphasis added). There is nothing in *Genesco* suggesting that the arbitration provision in any of the sales agreements expressly applied to disputes arising out of the *series* of agreements. The panel nonetheless held the RICO claim arbitrable, reasoning that "if the allegations underlying the claims 'touch matters' covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." 815 F.2d at 846. That same logic supports the conclusion that Kerr–McGee's RICO claim is arbitrable. Once the parties have agreed to arbitrate disputes arising under an agreement—here the Charter—the arbitrators should be able to consider any conduct of the parties that bears on the damages appropriate for a covered dispute. The dispute here over the oil shortage is clearly arbitrable; the arbitrators could treble that award if its occurrence violated the antitrust laws. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Or, in an appropriate case, the arbitrators could enhance it by punitive damages if prior misconduct established entitlement to such damages. *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir.1988). Indeed, punitive damages can be awarded because the party on whom they are imposed has repeatedly engaged in the offensive conduct even though the prior dealings did not involve the party claiming punitive damages.

Similarly, the arbitrators here could treble the award if the misconduct was part of a RICO pattern. If Triumph's argument that the arbitrators could not look to what happened on other voyages was carried to its logical extreme, a RICO claim could not be arbitrated except in the rare instances in which all the predicate acts occurred on a single voyage. In general, this court has hardly been overly receptive to civil RICO claims, see *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984), or to their arbitrability, see *McMahon v. Shearson/Amer-*

*ican Express, Inc.,* 788 F.2d 94 (2d Cir. 1986). But the Supreme Court reversed us in both cases, *Sedima,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Shearson,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), and has made it clear that RICO claims are arbitrable. We do not believe that the Court, in approving arbitration for RICO claims, thought it was creating a RICO arbitration forum only for situations in which all acts constituting the pattern (and the enterprise) arise under an agreement to arbitrate, requiring the parties in other situations to pursue the basic damage claim in arbitration and to sue thereafter for treble damages under RICO in a court. Since RICO claims are arbitrable, we see no reason here for limiting arbitrability to those situations in which all of the necessary prior conduct giving rise to RICO liability is governed by an agreement to arbitrate.

Indeed, after the district court vacated the Final Award, Kerr–McGee filed a "precautionary" complaint in the district court in order to state its RICO claim in that forum. Such a splintering of actions is contrary to the broad language used in the arbitration provision of the Charter, and would undermine the benefits the parties sought to achieve by agreeing to arbitrate "any and all" of their differences under it. We have held that a court must accord "the narrowest of readings" to the "excess of powers" provision of 9 U.S.C. § 10(d), which the district court relied on in vacating the Final Award. *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 703 (2d Cir.1978). That was not done here.

Accordingly, we find that the arbitration panel acted within the scope of the Charter when it awarded Kerr–McGee treble damages under RICO for Triumph's conversion of the chartered cargo, and that the district court erred by not confirming the Final Award.

B. *The Partial Final Award*

Under the Arbitration Act, a party has one year to avail itself of summary proceedings for confirmation of an award.

9 U.S.C. § 9. An award that finally and conclusively disposes of a "separate independent claim" may be confirmed even if it does not dispose of all the claims that were submitted to arbitration. See *Metallgesellschaft A.G. v. M/V Capitan Constante,* 790 F.2d 280, 283 (2d Cir.1986). Triumph contends that Kerr–McGee's motion to confirm the Partial Final Award is time-barred, because that award was a full and final disposition of the shortage claim and the motion was made more than one year after the date of the award. We question whether the one-year limitation should apply to a party seeking confirmation of an award that does not end the arbitration, since such a rule "will make arbitration more complicated, time consuming and expensive." Id. at 285 (Feinberg, J., dissenting). We need not resolve this issue, however, since we find that the Partial Final Award did not finally dispose of a separate independent claim, thus rendering the one-year limitation inapplicable in any event.

When it issued the Partial Final Award, the arbitration panel expressly left open whether, as a result of Triumph's breach, Kerr–McGee was also entitled to punitive or RICO damages, costs and attorneys' fees. It is thus apparent, as the district court found, that this award merely decided the issue of liability and partial damages on the shortage claim, which was a predicate act to the RICO claim, and did not finally dispose of an independent claim because it left open the question of damages. Cf. *Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411, 414 (2d Cir.1980).

For the above reasons, we reverse the district court's judgment insofar as it vacates the Final Award and affirm its judgment insofar as it confirms the Partial Final Award. The district court is directed to enter judgment confirming the Final Award in its entirety.