In the Matter of the New York Stock Exchange Arbitration between, **FAHNESTOCK & CO., INC., Petitioner–Appellant, Cross–Appellee,**

v.

**Joseph J. WALTMAN, Respondent–Appellee, Cross–Appellant.**

Nos. 927, 928, Dockets 90–7867, 90–7869.

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1991.

Decided June 10, 1991.

Lee D. Unterman, New York City (Patricia L. Moore, Broudy & Jacobson, New York City, of counsel), for petitioner-appellant, cross-appellee.

Robert Scandone, Philadelphia, Pa. (Mark J. Astarita, Gusrae, Kaplan & Bruno, New York City, Jane R. Goldberg, of counsel), for respondent-appellee, cross-appellant.

Paul Windels III, New York City (Perry & Windels, New York City, William J. Fitzpatrick, Gerard J. Quinn, New York City, of counsel), submitted a brief for amicus curiae the Securities Industry Ass'n, Inc.

Before VAN GRAAFEILAND, MINER and MAHONEY, Circuit Judges.

MINER, Circuit Judge:

Petitioner-appellant, Fahnestock & Co., Inc. ("Fahnestock") appeals from a judgment entered in the United States District Court for the Southern District of New York (Leisure, J.) confirming the compensatory damages portion of an arbitration award in favor of its former employee, Joseph J. Waltman. Waltman cross-appeals from the same judgment insofar as it vacates the punitive damages portion of the arbitration award.

On appeal, Fahnestock contends that the district court erred by denying its petition to vacate the entire defamation award because the members of the arbitration panel ("Arbitrators") exceeded their authority and manifestly disregarded the applicable law. Fahnestock argues that its filing of an amended Form U–5, a termination notice form that the National Association of Securities Dealers ("NASD") requires stock brokerage firms to file when they dismiss an employee, was absolutely privileged and could not serve as a basis for an award for defamation. On cross-appeal, Waltman argues that the court erred in vacating the Arbitrators' award for punitive damages because federal substantive law, as opposed to the New York law applied by the district court, permits such an award in arbitration proceedings brought pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16 (1988). For the reasons that follow, we affirm the judgment of the district court.

## BACKGROUND

The arbitration proceeding subject of this action arose as a result of the events surrounding the discharge of Waltman from the employ of Fahnestock. Waltman was hired on March 16, 1982 as a "registered representative to head Fahnestock's Retirement Trust Division" and "to manage and build Fahnestock's insurance products business." During the course of his employment, in addition to overseeing Fahnestock's Retirement Division, Waltman acted as an insurance sub-licensee for Fahnestock. In addition, he established a general insurance agency in Pennsylvania for the purpose of marketing insurance and annuity products for Fahnestock in Pennsylvania and other states. Waltman was discharged on December 12, 1988 when Fahnestock closed down its Retirement Trust Division.

When Waltman was terminated, Fahnestock filed a Form U–5 termination notice with the NASD, indicating that the discharge was occasioned by "business consolidation." When Fahnestock later was unable to locate some insurance files that it believed were maintained by Waltman, it contacted Waltman and requested that he return the files. Waltman refused to return the files, claiming that they belonged to his general insurance agency. Waltman explained that he would turn over the files only if Fahnestock obtained a release and indemnification from each registered agent named in the files.

Instead of complying with Waltman's request, Fahnestock filed a Statement of Claim with the Director of Arbitration of the New York Stock Exchange ("NYSE"), requesting the following relief: return of the original files, damages and costs, and other expenses. Fahnestock then filed an amended Form U–5. On the amended form, Fahnestock changed its previous answer in response to the question about whether the employee was under "internal review for fraud or wrongful taking of property, or violating investment-related statutes, regulations, rules or industry standards of conduct," from a "NO" to a "YES."

Waltman filed an answer in the NYSE arbitration, denying the allegations that he wrongfully took Fahnestock's property. He also filed a counterclaim, in which he alleged that Fahnestock and three of its officers, the chairman of the board, the president, and the general counsel, defamed him by filing the amended Form U–5.

During the course of eight hearings, the Arbitrators heard testimony concerning the chairman's threats to arrest Waltman for his failure to return the files, the chairman's instruction to refile the Form U–5 "in such a way as to indicate that [Waltman] had been fired for cause and noting that he had stolen property from Fahnestock," and the threats made to Waltman's current employer in an attempt to pressure Waltman into abandoning his defamation action. The Arbitrators awarded Waltman $56,000 in compensatory damages for wrongful discharge, $14,700 in legal fees, $100,000 for defamation and $100,000 in punitive damages. Liability was imposed on Fahnestock alone, and the claims against the individual officers were dismissed.

Waltman filed a petition to confirm the arbitral award under NYSE Arbitration rule 628(a) in the Eastern District of Pennsylvania. On March 15, 1990, Fahnestock filed a petition in the Southern District of New York to vacate the arbitral award under the Federal Arbitration Act, 9 U.S.C. § 10(d), claiming that the Arbitrators exceeded their authority by granting an award for defamation and by awarding punitive damages. No other challenges to the award were made. Federal jurisdiction was based on the diversity of the parties, as Fahnestock's principal place of business was New York and Waltman resided in Pennsylvania. The Eastern District of Pennsylvania court stayed the petition to confirm the arbitral award pending the outcome of the New York action to vacate it.

On August 22, 1990, the district court denied Fahnestock's petition to vacate the compensatory damages portion of the arbitral award for defamation, but granted its petition to vacate the punitive damages portion of the award. The court rejected Fahnestock's claim that statements made in the amended Form U-5 were absolutely privileged. Instead, it found only a qualified privilege, which could be overcome upon a showing of malice or lack of probable cause for the statement. Holding that a finding of malice or probable cause was a factual matter and, as such, could be reviewed by the courts only on a limited basis, the court found that the Arbitrators did not exceed their powers in rendering the compensatory defamation award.

With respect to the punitive damages portion of the arbitral award, the district court, relying on *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 353 N.E.2d 793, 386 N.Y.S.2d 831 (1976), held that the Arbitrators were prohibited from awarding punitive damages. In response to Fahnestock's contention that federal substantive law governs arbitrations conducted pursuant to the Federal Arbitration Act, the court held that "the state substantive law as set forth in *Garrity v. Lyle Stuart, Inc.* regarding the inability of arbitrators to award punitive damages, is not in direct conflict with any express provision of the Federal Arbitration Act," and therefore the application

of *Garrity* would not violate the supremacy clause of the United States Constitution.

## DISCUSSION

### I. Compensatory Award

An arbitration award may be vacated "[w]here the arbitrators exceeded their powers," 9 U.S.C. § 10(d), or where the arbitrators acted in "manifest disregard of the law." *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 265 (2d Cir.1989); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933–34 (2d Cir.1986); *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 892 (2d Cir.1985) (per curiam). Fahnestock asserts that the Arbitrators exceeded their powers and manifestly disregarded the law in granting an award for defamation based on its filing of the amended Form U-5. Fahnestock argues that, because it was required by law to file the form, the filing was subject to an absolute privilege. Therefore, it urges that the filing of the Form U-5 could not serve as a basis for an award for defamation. Fahnestock's arguments are without merit.

█ We have consistently accorded the narrowest reading to section 10(d), "especially when it 'has been invoked in the context of the arbitrators' alleged failure to correctly decide a question which all concede to have been properly submitted in the first instance.'" *Synergy Gas Co. v. Sasso*, 853 F.2d 59, 63 (2d Cir.) (citation omitted), *cert. denied*, 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988). Consequently, we have recognized that if arbitrators "rule[] on issues not presented to [them] by the parties, [they have] exceeded [their] authority and the award must be vacated." *Dighello v. Busconi*, 673 F.Supp. 85, 87 (D.Conn.1987), *aff'd mem.*, 849 F.2d 1467 (2d Cir.1988); *see Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 703 (2d Cir.1978). Here, it is uncontested that the ruling of the Arbitrators was confined to the issues presented by the parties. Moreover, we have recognized that defamation claims based on statements in a Form U-5 are arbitrable.

*See Fleck v. E.F. Hutton Group, Inc.,* 891 F.2d 1047, 1049, 1053 (2d Cir.1989). Therefore, any argument that it is beyond the power of arbitrators to decide these types of claims is contrary to the law of this circuit.

▮ Nor are we persuaded that the Arbitrators manifestly disregarded the law in awarding Waltman damages for defamation. Judicial inquiry under the manifest disregard standard likewise is extremely limited. *Bobker,* 808 F.2d at 933–34. We have held that there must be " 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law,' " *Siegel,* 779 F.2d at 892 (citation omitted), in order to sustain a finding of manifest disregard of the law. Illustrative of the degree of "disregard" necessary to support vacatur under this standard is our holding that manifest disregard will be found where an "arbitrator 'understood and correctly stated the law but proceeded to ignore it.' " *Id.* at 893 (citation omitted).

Under New York law, "[a] communication is said to be qualifiedly privileged where it 'is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned.' " *Toker v. Pollak,* 44 N.Y.2d 211, 219, 376 N.E.2d 163, 166, 405 N.Y.S.2d 1, 5 (1978); *see also Mihlovan v. Grozavu,* 72 N.Y.2d 506, 509, 531 N.E.2d 288, 289, 534 N.Y.S.2d 656, 657 (1988) (per curiam); *Shapiro v. Health Ins. Plan of Greater New York,* 7 N.Y.2d 56, 60, 163 N.E.2d 333, 336, 194 N.Y.S.2d 509, 512–13 (1959). The qualified privilege, however, can be vitiated upon a showing that the communication was made with actual malice. *Park Knoll Assocs. v. Schmidt,* 59 N.Y.2d 205, 211, 451 N.E.2d 182, 185, 464 N.Y.S.2d 424, 427 (1983); *see also Mihlovan,* 72 N.Y.2d at 509, 531 N.E.2d at 289, 534 N.Y.S.2d at 657–58. Actual malice has been defined as " 'personal spite or ill will, or culpable recklessness or negligence.' " *Garson v. Hendlin,* 141 A.D.2d 55, 64, 532 N.Y.S.2d 776, 782 (2d Dep't 1988) (citation omitted).

At the arbitration hearings, the Arbitrators heard testimony that the chairman of Fahnestock gave instructions to refile the Form U–5 "in such a way as to indicate that [Waltman] had been fired for cause and ... that he had stolen property from Fahnestock." Fahnestock's former managing director testified that the amended Form U–5 was filed at the command of Fahnestock's chairman for the specific purpose of damaging Waltman's reputation rather than for a regulatory purpose. Additionally, evidence was introduced that Fahnestock attempted to force Waltman to drop his counterclaim by threatening his current employer.

Here, the Arbitrators never indicated the reasons for the defamation award. However, it is axiomatic that arbitrators need not disclose the rationale for their award. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Koch Oil, S.A. v. Transocean Gulf Oil Co.,* 751 F.2d 551, 554 (2d Cir.1985). "[I]f a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1216 (2d Cir.1972); *see Siegel,* 779 F.2d at 894. Therefore, even though Fahnestock was protected by the qualified privilege in filing the amended form, based on the evidence, the arbitrators acted well within the bounds of their broad authority in making an award of compensatory damages in favor of Waltman. *See In re Marine Pollution Serv., Inc.,* 857 F.2d 91, 94 (2d Cir. 1988) (any "colorable justification" will support an arbitral award); *Andros Compania,* 579 F.2d at 704. The ample evidence of Fahnestock's flagrantly spiteful conduct, demonstrating its intent simply to injure Waltman's reputation, presented the Arbitrators with sufficient grounds to find that no qualified privilege attached to Fahnestock's filing of the amended form. *See Garson,* 141 A.D.2d at 65, 532 N.Y.S.2d at 782. It is apparent that the Arbitrators declined to extend the doctrine of absolute immunity to statements made to the NASD, a quasi-official body. *Cf. Toker,* 44 N.Y.2d at 222–23, 376 N.E.2d at 168–69,

405 N.Y.S.2d at 7; *Garson,* 141 A.D.2d at 59-60, 532 N.Y.S.2d at 779. Therefore, under these circumstances, we agree with the district court that the Arbitrators' compensatory defamation award in favor of Waltman should be confirmed.

## II. *Punitive Damages Award*

■ On cross-appeal, Waltman argues that the district court erred in vacating the punitive damages portion of the Arbitrators' award. The district court perceived that the governing rule was established by the New York Court of Appeals: "An arbitrator has no power to award punitive damages, even if agreed upon by the parties." *Garrity,* 40 N.Y.2d at 356, 353 N.E.2d at 795, 386 N.Y.S.2d at 832. The *Garrity* rule is bottomed on policy considerations deemed controlling by New York's highest court: "[E]nforcement of an [arbitrator's] award of punitive damages as a purely private remedy would violate strong public policy." *Id.* The rule maintains its vitality in the courts of New York. *See, e.g., Diker v. Cathray Constr. Corp.,* 158 A.D.2d 657, 658, 552 N.Y.S.2d 37, 38 (2d Dep't 1990); *Belco Petroleum Corp. v. AIG Oil Rig, Inc.,* 164 A.D.2d 583, 591, 565 N.Y. S.2d 776, 784 (1st Dep't 1991).

Waltman's challenge to the district court judgment is premised on the federal substantive law of arbitrability: "Section 2 [of the FAA, 9 U.S.C. § 2,] is a congressional declaration of a liberal federal policy favoring arbitration agreements.... The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Since the agreement between the parties falls within the coverage of the FAA, allows for the arbitration of any dispute between them and includes no restriction on the award of punitive damages under the governing rules of the New York Stock Exchange, Waltman urges that there should be no bar to the award of punitive damages under federal substantive arbitration law. Indeed, there is precedent for Waltman's position that federal law and policy confers upon FAA arbitrators the right to award punitive damages even where, as is not the case here, the arbitration parties agree that New York law is to govern. *See, e.g., Bonar v. Dean Witter Reynolds, Inc.,* 835 F.2d 1378, 1386-88 (11th Cir.1988); *Barbier v. Shearson Lehman Hutton, Inc.,* 752 F.Supp. 151 (S.D.N.Y.1990); *Singer v. E.F. Hutton & Co.,* 699 F.Supp. 276 (S.D.Fla.1988); *Duggal Int'l Inc. v. Sallmetal, B.V.,* No. 84 Civ. 7170 (JMC) (S.D.N.Y. May 8, 1986). Our view is somewhat different.

While it is true that in enacting the FAA, "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements," *Southland Corp. v. Keating,* 465 U.S. 1, 16, 104 S.Ct. 852, 861, 79 L.Ed.2d 1 (1984), it also is true that "[t]he FAA contains no express preemptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration," *Volt Info. Sciences v. Board of Trustees of the Leland Stanford Jr. Univ.,* 489 U.S. 468, 477, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989). Accordingly, state law may be applied in arbitration matters, subject to preemption only "to the extent that it actually conflicts with federal law." *Id.; see also Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941) (preemption is found in cases where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."). We find no conflict between the provisions of the FAA and the *Garrity* rule.

What the FAA requires is that parties comply with their agreements to arbitrate. " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citation omitted); *see also New York News Inc. v. Newspaper Guild of New York,* 927 F.2d 82, 84 (2d Cir.1991); *Necchi v. Necchi Sewing Mach. Sales Corp.,* 348 F.2d 693, 696 (2d Cir.1965), *cert. denied,* 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966). Walt-

man's defamation claim certainly was a matter for arbitration pursuant to the agreement of the parties, but there was no agreement as to whether punitive damages were allowable. If the parties had agreed to permit the arbitrators to make such an award, federal arbitration law might require confirmation, for "parties are generally free to structure their arbitration agreements as they see fit," and the FAA provides for enforcement of the terms of such privately negotiated agreements. *Volt Information Sciences*, 489 U.S. at 478–79, 109 S.Ct. at 1255–56. The body of preemptive federal substantive law that supports the FAA has developed largely in response to state laws that restrict arbitration in derogation of agreements freely negotiated. *See, e.g., Perry v. Thomas*, 482 U.S. 483, 489–90, 107 S.Ct. 2520, 2525–26, 96 L.Ed.2d 426 (1987). The FAA itself was designed "to make arbitration agreements as enforceable as other contracts," *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806 n. 12, 18 L.Ed.2d 1270 (1967) and "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219–20, 105 S.Ct. 1238, 1241–42, 84 L.Ed.2d 158 (1985). The federal substantive law of arbitration assures the accomplishment of these purposes.

Why should state law be applied in this case, where the parties have not specified remedies and where the arbitrators therefore should be free to fashion appropriate relief? The answer lies in the jurisdictional basis of the action giving rise to this appeal. While the FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, ... it does not create any independent federal question jurisdiction...." *Moses H. Cone*, 460 U.S. at 25 n. 32, 103 S.Ct. at 942 n. 32. Some independent basis for federal jurisdiction must be established. The petition in the case at bar has invoked the diversity of citizenship of the parties as a means of acquiring subject matter jurisdiction. 28 U.S.C. § 1332. The award of the arbitrators was before the district court in this diversity case for review under state law. As previously noted, state law relating to the propriety of a punitive damages award by arbitrators in the absence of an agreement on the subject is not preempted by any federal substantive law bearing on the subject.

Ordinarily, "[i]n a diversity action, or in any other lawsuit where state law provides the basis of decision, the propriety of an award of punitive damages for the conduct in question ... [is a] question[ ] of state law." *Browning–Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278, 109 S.Ct. 2909, 2922, 106 L.Ed.2d 219 (1989). The measure of damages in general is a matter controlled by New York substantive law where federal jurisdiction in New York is predicated on the diversity of the parties. *See Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 n. 5. (2d Cir.1984); *Van Gemert v. Boeing Co.*, 553 F.2d 812, 813 (2d Cir.1977). It follows that in this action the *Garrity* rule prohibiting the award of punitive damages by arbitration must be applied. That the rule is grounded in state policy concerns renders it no less a rule of substantive law. *See* Stewart, *Punitive Damages Arbitration: Fish or Cut Bait*, N.Y.L.J., Feb. 21, 1991, at 5, col. 1.

We emphasize that an agreement between the parties specifically to award punitive damages may well have dictated a different outcome. The *Garrity* rule, to the extent that it purports to prevent arbitrators from awarding punitive damages in the face of such an agreement, seems to invoke preemption concerns, since it runs afoul of the federal substantive law rules that sweep aside any state attempt to interfere with the agreement of the parties. The matter may be left for another day, however, because we deal here only with the NYSE provisions for arbitration.

Article XI of the NYSE Constitution provides that "[a]ny controversy between ... a member, allied member or member organization and any other person, arising out of the business of such member ..., shall at the instance of any such party, be submitted for arbitration...." 2 N.Y.S.E. Guide (CCH) ¶ 1501. Additionally, NYSE rule 600(a) provides for the arbitration of

"[a]ny dispute, claim or controversy," 2 N.Y.S.E. Guide (CCH) ¶ 2600, and NYSE rule 347 provides for the arbitration of "any controversy ... arising out of the employment or termination of employment ...," 2 N.Y.S.E. Guide (CCH) ¶ 2347.

Despite this broad language, the NYSE provisions are silent with regard to the power of arbitrators to award punitive damages. As the district court observed, unlike the cases involving arbitration agreements incorporating the rules of the American Arbitration Association ("AAA"), which provide that arbitrators may award "any remedy or relief which [is] just and equitable and within the scope of the agreement," *see Bonar*, 835 F.2d at 1386 (upholding AAA award of punitive damages); *Raytheon Co. v. Automated Business Sys., Inc.*, 882 F.2d 6, 9 (1st Cir.1989) (same), the NYSE rules have no provisions relating to remedy or relief. Clearly, if the NYSE wanted to empower arbitrators to award punitive damages, it could have done so. *See* Friedman, *Punitive Damages in Securities Cases*, N.Y.L.J., May 2, 1991, at 3, col. 1.

Waltman points to the award form, which is used by NYSE arbitrators to memorialize the arbitral awards and allows for entry of a punitive damages award under a specific heading marked "punitive damages," to support his contention that NYSE arbitrators are empowered to award punitive damages. We cannot conclude that award forms are part of the arbitration agreement. Moreover, NYSE arbitrations occur throughout the nation, and our holding here does not mean that in those states in which arbitral punitive damages awards are permitted, arbitrators may not appropriately utilize the punitive damages section of the award form.

In a recent decision of this Court, the panel in dictum noted that "in an appropriate case, the arbitrators could enhance [an award] by punitive damages if prior misconduct established entitlement to such damages." *Kerr–McGee Refining Corp. v. M/T Triumph*, 924 F.2d 467, 470 (2d Cir. 1991) (citing *Bonar*, 835 F.2d at 1387). In *Kerr–McGee*, the plaintiff was awarded treble damages under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–1968, in an arbitration proceeding. 924 F.2d at 469–70. *Kerr–McGee*, however, was not a diversity case requiring a preemption analysis, since RICO there provided federal question jurisdiction under 28 U.S.C. § 1331.

Although "[w]e have consistently accorded the narrowest of readings to the Arbitration Act's authorization to vacate awards," *Andros Compania*, 579 F.2d at 703, we also have noted that under *Garrity* an arbitral award of punitive damages must be vacated in an appropriate case. *See John T. Brady & Co. v. Form–Eze Sys., Inc.*, 623 F.2d 261, 263 (2d Cir.) (" 'where the damages are genuinely intended to be punitive[,] ... the courts [should] vacate the award' " (citation omitted)), *cert. denied*, 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980); *see also Synergy Gas Co. v. Sasso*, 853 F.2d 59, 65–66 (2d Cir.) (dicta), *cert. denied*, 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988). For the reasons given, this is an appropriate case under the provisions of section 10(d) of the FAA for vacatur of the punitive damages award.

## CONCLUSION

The judgment of the district court is affirmed in all respects.

MAHONEY, Circuit Judge, concurring in part and dissenting in part:

I join the majority opinion insofar as it affirms that portion of the judgment below which confirmed the arbitral award of compensatory damages. I respectfully dissent, however, from the majority's affirmance of the district court's vacatur of the arbitral award of punitive damages.

The majority recognizes the fundamental requirement of the FAA "that parties comply with their agreements to arbitrate." They further concede that "the parties have not specified remedies and ... the arbitrators therefore should be free to fashion appropriate relief." They deem these considerations outweighed, however, by the fact that diversity of citizenship

provides the basis for federal jurisdiction in this case. This leads them to apply normally applicable diversity rules, and thus to conclude that the availability of punitive damages is a question of substantive law for which state law provides the rule of decision. Deeming New York law applicable, they then invoke *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 353 N.E.2d 793, 386 N.Y.S.2d 831 (1976), to affirm the district court's vacatur of the arbitral award of punitive damages.

In my view, this analysis misreads the applicable law and creates an unnecessary conflict with two of our sister circuits. As the Supreme Court stated in *Moses M. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1982):

> The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976 ed., Supp. V) or otherwise. Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue.

*Id.* at 25 n. 32, 103 S.Ct. at 942 n. 32 (emphasis added).

The majority's approach effectively disregards the existence of a "body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate," *id.*, and imposes the diversity regime of *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The *Erie* standard is intended, however, for "all matters except those in which some federal law is controlling." *Id.* at 72, 58 S.Ct. at 819. It therefore seems to me clearly inappropriate to apply *Erie*-generated rules to an area for which, the Supreme Court has instructed, federal law supplies the rule of

decision. That, however, is precisely what the majority has done in this case.

The Supreme Court has continually reiterated that the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). As the Court stated in *Volt:*

> The FAA was designed "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate," *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. [213, 219–20, 105 S.Ct. 1238, 1241–42, 84 L.Ed.2d 158 (1985) ], and to place such agreements " 'upon the same footing as other contracts,' " *Scherk v. Alberto–Culver Co.*, 417 U.S. [506, 511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974) ] (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)). While Congress was no doubt aware that the Act would encourage the expeditious resolution of disputes, its passage "was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered." *Byrd*, 470 U.S., at 220 [105 S.Ct. at 1242].

*Id.* Accordingly, the FAA mandates district courts, upon application, to "direct[ ] that ... arbitration proceed *in the manner provided for in [the parties'] agreement.*" 9 U.S.C. § 4 (1988) (emphasis added).

It follows that a state law which limits freedom of contract with respect to arbitration agreements covered by the FAA conflicts with the FAA and is preempted by it. *See Saturn Distribution Corp. v. Williams*, 905 F.2d 719, 722 (4th Cir.) ("with few limitations, if a state law singles out arbitration agreements and limits their enforceability it is preempted."), *cert. denied*, —— U.S. ——, 111 S.Ct. 516, 112 L.Ed.2d 527 (1990); *cf. Volt*, 489 U.S. at 479, 109 S.Ct. at 1256 ("Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.").

As a result, the cases that have addressed the question whether punitive damages may be awarded in arbitration have looked to the agreement between the parties to resolve the issue. *See, e.g., Raytheon Co. v. Automated Business Sys.*, 882 F.2d 6, 9–12 (1st Cir.1989); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1386–88 (11th Cir.1988); *Pyle v. Securities U.S.A., Inc.*, 758 F.Supp. 638, 639 (D.Colo.1991); *Barbier v. Shearson Lehman Hutton, Inc.*, 752 F.Supp. 151, 159–60 (S.D.N.Y.1990); *Peabody v. Rotan Mosle, Inc.*, 677 F.Supp. 1135, 1139 (M.D.Fla.1987); *Ehrich v. A.G. Edwards & Sons, Inc.*, 675 F.Supp. 559, 563 (D.S.D.1987); *Duggal Int'l, Inc. v. Sallmetall, B.V.*, No. 84 Civ. 7170 (JMC) (S.D.N.Y. May 8, 1986); *Willoughby Roofing & Supply Co. v. Kajima Int'l, Inc.*, 598 F.Supp. 353, 357–59 (N.D. Ala.1984), *aff'd*, 776 F.2d 269 (11th Cir. 1985) (per curiam); *Willis v. Shearson/American Express, Inc.*, 569 F.Supp. 821, 823 (M.D.N.C.1983).

Further, as the majority recognizes, courts have rebuffed efforts to invoke *Garrity* to preclude an arbitral award of punitive damages even where the pertinent contract explicitly stated that it was to be governed by New York law. *See, e.g., Bonar*, 835 F.2d at 1386–87; *Barbier*, 752 F.Supp. at 153, 160 & n. 15; *Singer v. E.F. Hutton & Co.*, 699 F.Supp. 276, 278–79 (S.D.Fla.1988); *Duggal Int'l*, slip op. at ——, —— n. 4; *Willis*, 569 F.Supp. at 823–24; *see also Raytheon*, 882 F.2d at 11 (rejecting *Garrity*), *Ehrich*, 675 F.Supp. at 565 (same); *Willoughby*, 598 F.Supp. at 359 (same).

If an express provision that a contract will be governed by New York law does not suffice to render an arbitration under that contract subject to *Garrity*, it must surely follow *a fortiori* that the mere invocation of diversity jurisdiction does not do so. Further, the imposition of the *Garrity* rule, without respect to (or any meaningful inquiry regarding) the contractual intention of the parties, directly contravenes the dominant purpose and policy of the FAA as repeatedly articulated by the Supreme Court.

The district court herein ruled that because Garrity "is not in direct conflict with any express provision of the [FAA]," it should be invoked to preclude any award of punitive damages. *Fahnestock & Co. v. Waltman*, No. 90 Civ. 1792 (PKL), slip op. at 10, 1990 WL 124354 (S.D.N.Y. Aug. 23, 1990). Although the contract at issue was distinguished from contracts incorporating an American Arbitration Association rule that is often read to authorize an award of punitive damages, *id.* at 11, no significant inquiry was conducted regarding the intent of the parties, and no mention was made of the NYSE award form, applicable here, that makes specific provision for punitive damages. Rather, *Garrity* was deemed controlling as a matter of law.

In affirming, my colleagues dismiss the award form because they "cannot conclude that award forms are part of the arbitration agreement." Indeed, in the absence of any consideration of the issue by the district court, it is impossible on this record to reach any conclusion pro or con regarding the matter, or more generally regarding the intent of the parties as to the award of punitive damages. The majority makes clear, in any event, that it "might" defer only to an explicit agreement between the parties authorizing an award of punitive damages.

Given the rule that "ambiguities as to the scope of the arbitration clause [are] resolved in favor of arbitration," *Volt*, 489 U.S. at 476, 109 S.Ct. at 1254; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) ("as with any other contract, the parties' intentions control, but those intentions are generously construed as to arbitrability."); *Moses M. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941–942 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"), a much more hospitable approach to arbitral power to award punitive damages is appropriate. In any event, *some* significant inquiry as to contractual intent is required. Clearly, none has occurred here.

I would therefore reverse the ruling of the district court vacating the arbitral

522

award of punitive damages and remand for reconsideration of that issue in terms of the contractual intent of the parties. I am not prepared to conclude at this juncture that the outcome of that necessarily particularized inquiry will result in a different disposition of this issue. I am convinced, however, that the inquiry should be undertaken, rather than aborted by the invocation of *Garrity*.

No precedent of this court calls for a different result. *John T. Brady & Co. v. Form–Eze Systems, Inc.*, 623 F.2d 261, 263–64 (2d Cir.), *cert. denied*, 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980), discussed *Garrity*, but concluded that no award of punitive damages had been made requiring any ruling on the issue in that case. *Synergy Gas Co. v. Sasso*, 853 F.2d 59, 65 (2d Cir.), *cert. denied*, 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988), similarly dismissed an argument premised upon *Garrity* because the arbitral award was construed not to include punitive damages. Accordingly, neither case had any occasion to address the issue whether *Garrity* can operate to preclude punitive damages awards in FAA arbitrations. In any event, any ruling giving that effect to *Garrity* would be inconsistent with *Moses M. Cone's* teaching that the FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." 460 U.S. at 25 n. 32, 103 S.Ct. at 942 n. 32. More recently, in *Kerr–McGee Refining Corp. v. M/T Triumph*, 924 F.2d 467, 470 (2d Cir.1991), we stated, in the context of an arbitration of a RICO claim, that punitive damages could be awarded "in an appropriate case," citing *Bonar*.

Although our precedents are ambiguous, I conclude that governing Supreme Court doctrine, the vast weight of federal court authority on the issue, and basic principles of federal arbitration law counsel against the ruling of the majority in this case on the issue of punitive damages. I therefore respectfully dissent from that ruling.