RADIO AND TELEVISION BROAD-CAST ENGINEERS UNION, LOCAL 1212, International Brotherhood of Electrical Workers, AFL–CIO, Plaintiffs,

v.

WPIX, INC. Defendant.

No. 86 Civ. 2390.

United States District Court, S.D. New York.

July 10, 1989.

Richard H. Markowitz, Markowitz and Richman, Philadelphia, Pa., for plaintiffs.

Susan Benton–Powers, Sonnenschein, Carlin, Nath and Rosenthal, Chicago, Ill., for defendant.

## OPINION AND ORDER

CONBOY, District Judge:

This is an action to enforce an arbitration award rendered in favor of the plaintiff, Radio and Television Broadcast Engineers Union, Local 1212, International Brotherhood of Electrical Workers, AFL–CIO (the "Union") and against the defendant WPIX, Inc. (WPIX) on February 20, 1986. The Union filed this action to enforce the arbitrator's award, with WPIX counterclaiming that the award be vacated.

The Union has moved and WPIX has cross-moved for summary judgment. Initially, there were two issues presented for our consideration: (1) whether Section 3.09(a), the leave of absence clause, of the collective bargaining agreement (the "agreement" or the "CBA") between WPIX and the Union violates the National Labor Relations Act (the "NLRA") and (2) whether the arbitrator's award drew its essence from the collective bargaining agreement. The first issue, however, was subsequently dealt with in a simultaneous unfair labor practice proceeding before the National Labor Relations Board ("NLRB" or the "Board").[1] In that proceeding, on January 6, 1987, an administrative law judge ruled in favor of WPIX, but, on April 1, 1988, that ruling was overruled by the Board.[2] WPIX sought review of the Board's order in the Second Circuit Court of Appeals. Both parties concede that based on the Court of Appeals decision in *WPIX, Inc. v. National Labor Relations Board and Radio and Television Broadcast Engineers Union, Local 1212, I.B. E.W., AFL–CIO*, 870 F.2d 858 (2d Cir.1989), Section 3.09(a) of the collective bargaining agreement does not violate the NLRA, and thus, this issue is no longer in dispute here. Accordingly, we only address the question of whether the arbitrator's award drew its essence from the CBA.

## BACKGROUND

Essentially all of the facts are agreed to by both parties, save a few non-material ones, and, are set forth below as derived

1. On August 2, 1985, WPIX filed a charge with the NLRB alleging that the Union's demand for reinstatement violated Sections 8(b)(1)(A) and (2) of the NLRA.

2. The proceeding in this Court was formally stayed pending a ruling of the ALJ, and then the appeal of that ruling to the Board. It was informally stayed, on the consent of the parties, during the pendency of the appeal in the Second Circuit.

from the parties' respective statements pursuant to Local Rule 3(g) of the Southern and Eastern Districts. WPIX, is a New York corporation which operates a television station in New York. The Union represents television engineers and technicians employed by WPIX. The Union and WPIX are parties to a collective bargaining agreement establishing wages, hours and other terms and conditions of employment.

The agreement provides a grievance and arbitration procedure establishing a method for the hearing of grievances and differences between the parties. Such differences are to be submitted to an impartial arbitrator selected under the auspices of the American Arbitration Association. Section 1.08(b) of the CBA specifies that the decision of the arbitrator shall be final and may be enforced by appropriate action in any court of competent jurisdiction. The provision which is the subject of dispute here is the leave of absence provision, as provided in Section 3.09(a):

> At the written request of the Union, for the conduct of Union business in connection with the broadcasting industry only, any employee shall be granted a leave of absence without pay for a period not to exceed two (2) years. Such employee's seniority shall continue to accrue throughout such a leave for layoff purposes only.

WPIX hired Joseph Tomaselli in 1968. In August, 1982 the Union notified WPIX that Mr. Tomaselli, then employed by WPIX's Engineering Department, intended to take a leave of absence from WPIX beginning August 25, 1982 in order to work full-time for the Union as a Business Representative. WPIX verbally agreed to the leave pursuant to their agreement and WPIX states they forwarded a memo confirming the granting of Mr. Tomaselli's leave to the file. Defendant's Local Rule 3(g) Statement at ¶ 5. The Union agrees with the sequence of events leading to the granting of leave but disputes that the memo granting Mr. Tomaselli's leave was ever forwarded to them. Plaintiff's Re-

sponse to Defendant's 3(g) Statement at ¶ 5.

As a Business Representative, Mr. Tomaselli negotiated collective bargaining agreements on behalf of the Union with twenty-five television and radio stations. *WPIX, Inc. v. National Labor Relations Board and Radio and Television Broadcast Engineers Union, Local 1212, I.B.E.W., AFL–CIO,* 870 F.2d 858, 860 (2d Cir.1989). During the time he was on leave and employed by the Union, he received medical insurance benefits under the WPIX bargaining unit plan. The Union periodically reimbursed WPIX for this coverage.

On May 25, 1984, the Business Manager and Financial Secretary of the Union sent a letter to WPIX advising it that Mr. Tomaselli's leave of absence was to be extended for an additional two years. Plaintiff's 3(g) Statement at ¶ 11. WPIX denies ever receiving this letter and states that it never approved Mr. Tomaselli's extension. Defendant's 3(g) Statement at ¶ 10. Mr. Tomaselli, however, remained in his position as Business Representative, without any change as to the method of payment of his insurance,[3] until July 3, 1985, when his term ended earlier than expected upon the election of a new administration. Mr. Tomaselli then notified WPIX in a letter to Robert Murch, Vice President of Engineering, that he would like to meet with Mr. Murch to discuss his reinstatement. Mr. Murch, on July 11, 1985, acknowledged receipt of Mr. Tomaselli's letter and explained that due to the lack of a vacancy in the engineering staff, WPIX could not reinstate him. On July 23, 1985, by letter to Mr. Murch which was also to serve as a grievance, the Union demanded that Mr. Tomaselli be reinstated. By letter dated July 29, 1985, WPIX refused the Union's demand to reemploy Mr. Tomaselli, stating that WPIX had never received, much less approved, the extended portion of the leave of absence and that, therefore, they considered the leave to have been unilaterally

---

**3.** WPIX does not deny that it paid Mr. Tomaselli's insurance premiums during the extension of his leave, but states, unconvincingly, that it was only a "conduit" for the payment.

extended by the Union.[4]

On December 16, 1985, the Union's grievance was heard by Arbitrator Milton Rubin, who was selected pursuant to the procedure outlined in the CBA. The arbitrator has full and final authority over disputes submitted to it, limited only by the provision that "the arbitrator shall not have the power to add to, modify or change any of the provisions of the agreement." On February 20, 1986, the arbitrator issued an award stating that WPIX had violated the collective bargaining agreement by refusing to reinstate Mr. Tomaselli. The arbitrator found the parties had mutually modified Section 3.09 of the agreement, extending Mr. Tomaselli's leave beyond two years. He concluded that the Union had notified WPIX of Tomaselli's extension and that WPIX had acquiesced thereto. Arbitrator's Opinion and Award, Exhibit B to the Complaint, at 8. This determination was based upon (1) a presumption that the Union's letter had been mailed and delivered, (2) the fact that WPIX continued to recognize and deal with Mr. Tomaselli as the Union's Business Representative during the extension period, and (3) the fact that WPIX continued to pay and was reimbursed for Mr. Tomaselli's insurance coverage during the extension of his leave as it had in the two years prior. The award ordered WPIX to offer employment to Mr. Tomaselli and to compensate him for earnings and benefits lost. WPIX has failed to comply with the arbitrator's award as it has not yet reinstated Mr. Tomaselli or compensated him for earnings and benefits lost.

## DISCUSSION

 Section 10 of the Arbitration Act provides that the United States court in the district an arbitrator's award is made may vacate the award upon application of any party,

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct....

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made....

9 U.S.C. § 10 (West 1970). The courts are not authorized to review the merits of an award even where the parties allege that the award rests on errors of fact or misinterpretations of the contract. *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). There is strong federal policy to settle labor disputes by arbitration which would be undermined if the courts had final say on the merits of an arbitrator's award. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). If the courts could intervene on the merits of the award, the speedy, and less expensive, resolution of grievances by arbitration would be frustrated. *Misco*, 108 S.Ct. at 371. The reviewing courts are confined to determining whether the award draws its essence from the agreement and whether the arbitrator used his "own brand of industrial justice." *United Paperworkers Int'l Union, AFL–CIO v. Misco*, 484 U.S. 29, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987) (construing *Enterprise Wheel & Car Corp.*, 363 U.S. at 596, 80 S.Ct. at 1360). As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the court can not vacate an award because it disagrees with the factual findings or contract interpretations. *Misco*, 108 S.Ct. at 371. The burden of proof rests squarely on WPIX as the party attempting to vacate the arbitration award. *Transit Casualty Co. v. Trenwick Reinsurance Co., Ltd.*, 659 F.Supp. 1346, 1351 (S.D.N.Y.1987).

**4.** In this letter, WPIX claims they notified the Union that Mr. Tomaselli had abandoned his employment by failing to return after two years of leave. The Union denies that the letter of July 29, 1985 informed the Union of Mr. Tomaselli's abandonment.

The Union moved for summary judgment to enforce the arbitrator's award, asserting, in anticipation of WPIX's cross-motion, that the award draws its essence from the agreement. WPIX cross-moved for summary judgment claiming that the arbitrator's award should be vacated pursuant to Section 9 of the Arbitration Act, 9 U.S.C. § 10(d), as the arbitrator exceeded his authority by looking beyond the clear and unambiguous terms of the agreement, and, therefore, the award does not draw its essence from the agreement. As stated above, essentially all of the facts are agreed to. The few disputed facts, whether WPIX ever sent a confirmatory memorandum to the Union granting, in the first instance, Tomaselli the leave of absence, and whether WPIX actually received the Union's May 25, 1984 letter requesting the extension of Tomaselli's leave, which were also contested, and decided, at the arbitration level, are not material in determining whether the agreement does or does not draw its essence from the contract. The parties do not disagree on what evidence was submitted to the arbitrator; rather, these disputed facts show that they disagree with how certain facts and presumptions were used by the arbitrator to interpret the agreement. These disputed facts, then, will not preclude granting summary judgment as they actually represent the arbitrator's factual findings. Even if we disagreed with these findings, which we do not, we cannot disturb them; instead, as outlined above, we are only empowered to look at the factual findings to determine whether they draw their essence from the CBA. This brings us to the parties' sole legal question: whether the arbitrator, in interpreting the agreement, was permitted to look outside the "four corners" of the CBA.

The Supreme Court in *Enterprise Wheel & Car* and its progeny have established standards which the courts are to follow in determining whether an arbitrator acted within his authority. "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; ... He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." 363 U.S. at 597, 80 S.Ct. at 1361. It is well settled that the arbitrator may look beyond the terms of the agreement for guidance, contrary to the contentions of WPIX. "The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law— the practices of the industry and the shop—is equally part of the collective bargaining agreement although not expressed in it." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). "There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties." *Id.* at 579, 80 S.Ct. at 1351. Thus, an arbitrator may interpret the CBA "in light of the parties intent revealed through bargaining history, past practices, rights established under earlier agreements, and *other rudimentary sources of contract construction*." *Western Electric Co., Inc. v. Communications Workers of America, AFL–CIO*, 450 F.Supp. 876, 882 (E.D.N.Y.), *aff'd mem.*, 591 F.2d 1333 (2d Cir.1978) (emphasis added). The Supreme Court has not limited the sources of guidance where the express language of the agreement is clear and unambiguous and we decline WPIX's invitation to do so.

The arbitrator states in his award that Section 3.09(a) of the agreement provides that a leave of absence for the conduct of Union business shall not exceed two years. While the arbitrator recognized the express, unambiguous terms of the agreement, he looked to the conduct of the parties for additional guidance in interpreting the agreement and making his award. "The arbitrator reached his conclusion ... by construing [Section 3.09] in light of the parties conduct." *See Western Electric Co.*, 450 F.Supp. at 882. The arbitrator is within his authority to look at "rudimentary sources of contract construction," such as the parties' conduct, when construing a party's intent in order to interpret an agreement. *See id.* The arbitrator found

that the parties mutually modified Section 3.09, extending Mr. Tomaselli's leave by their conduct, after the initial two year period was complete. Arbitrator's Opinion and Award, Exhibit B to the Complaint, at 8. "Parties may modify their contractual obligations by an agreement reasonably to be understood from their conduct." *Fox v. Merrill Lynch & Co., Inc.*, 453 F.Supp. 561, 564 (S.D.N.Y.1978). The arbitrator validly presumed that the Union's letter of May 25, 1984 requesting an extension of Mr. Tomaselli's leave of absence was mailed and delivered to WPIX. In addition, the arbitrator held that the absence of a response by WPIX could be deemed an acceptance because WPIX (1) never responded to the Union's original request for Mr. Tomaselli's leave of absence; (2) continued to pay Mr. Tomaselli's insurance premiums under the WPIX bargaining unit plan after the initial two year leave of absence was over; and (3) continued to deal with him as the Business Representative after May of 1984. WPIX revealed an intent to extend Mr. Tomaselli's leave of absence and led the Union to believe that the request to extend Mr. Tomaselli's leave had been accepted by continuing to deal with Mr. Tomaselli in his official capacity and to pay his insurance premiums under WPIX's insurance plan. "But while the acts of the parties cannot support a construction contrary to the plain meaning of the language used, such conduct may be evidence of a subsequent modification of their contract." S. Williston, *A Treatise on the Law of Contracts* § 623 (3rd ed. 1961). The arbitrator's finding that the parties, by their conduct described above, modified Section 3.09 of the agreement, does not contravene the essence of the collective bargaining agreement. "Few things can better evidence the meaning of a contract than the actions of the parties themselves." *Ottley v. Palm Tree Nursing Home*, 493 F.Supp. 910, 914 (S.D.N.Y. 1980).

Section 1.08(b) of the agreement states that the arbitrator may not add to, modify, or change any provision of the agreement. WPIX argues that the arbitrator's award must be vacated under this section as it was the *arbitrator* who modified the agreement. We believe that the *parties* themselves, by their conduct, modified the agreement. The arbitrator merely made this finding; he did not himself modify the agreement. Thus, the cases cited by WPIX, where courts have vacated an arbitrator's award because the award modified or changed the agreement, are inapposite.

For example, in *In re Marine Pollution Service, Inc. v. Local 282, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 857 F.2d 91 (2d Cir.1988), the Circuit Court held the arbitrator's award failed to draw its essence from the agreement as the arbitrator " '*must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract....' " 857 F.2d at 94 (emphasis in original) (quoting *Ethyl Corp. v. United Steelworkers*, 768 F.2d 180, 187 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986)). *Marine Pollution* is clearly distinguishable from the case at bar. Here, the arbitrator's award is not based on a body of thought, feeling, policy or law outside the agreement. Rather, the arbitrator applied basic contract law principles—the conduct of the parties—to interpret the express language of the agreement and found that the parties themselves mutually modified the agreement. Applying basic contract law principles is not outside the agreement since interpreting the agreement is completely within the arbitrator's authority. *See Misco*, 108 S.Ct. at 371; *Enterprise Wheel & Car*, 363 U.S. at 597, 80 S.Ct. at 1361. Accordingly, the arbitrator did not unilaterally modify the agreement, nor did he ignore the express provisions of the contract, violating Section 1.08 of the agreement, as WPIX claims. The additional cases cited by WPIX, *Georgia–Pacific Corp. v. Local 27, United Paper workers Int'l Union*, 864 F.2d 940 (1st Cir.1988); *Bruno's, Inc. v. United Food and Commercial Workers Int'l Union, Local 1657*, 858 F.2d 1529 (11th Cir.1988); and *S.D. Warren Co. v. United Paperworkers Int'l*, 845 F.2d 3 (1st Cir.1988), where the courts vacated an arbitrator's

award on similar grounds, may be distinguished on the basis of this same analysis.

Therefore, for all of the foregoing reasons, we conclude that the arbitrator interpreted the agreement in light of the conduct of the parties, and that it was within his authority to do so, and, thus, the award draws its essence from the agreement. This being a question of law, and there being no material facts which preclude resolving this question, the Union's motion for summary judgment to enforce the arbitrator's award is granted and WPIX's motion to vacate the award is denied and its counterclaim is dismissed. Pursuant to the CBA, Mr. Tomaselli must be offered the position he held before he took his leave of absence or a position generally similar thereto with the same seniority. He is also to be compensated for his loss of earnings and benefits from July 7, 1985 to his reinstatement, plus interst at 9% from that date, less other earnings he may have received during this time period.

SO ORDERED.