**ELITE INC., Petitioner,**

v.

**TEXACO PANAMA INC., Respondent.**

**No. 90 Civ. 7913 (JES).**

United States District Court, S.D. New York.

Nov. 5, 1991.

---

Healy & Baillie, New York City, Jack A. Greenbaum, of counsel, for petitioner.

Hill Rivkins Liesberg O'Brien Mulroy & Hayden, New York City, Carlos G.E. Rameh, Douglas R. Burnett, of counsel, for respondent.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Petitioner, Elite Inc., ("Elite") moves to vacate an arbitration award issued by the American Arbitration Association (the "AAA") on November 14, 1990. Respondent, Texaco–Panama Inc. ("Texaco") cross-moves to confirm that award. For the reasons that follow, petitioner's motion is denied, and respondent's motion is granted.

## BACKGROUND

On or about May 25, 1988, Texaco chartered the M/T Fantasy L from Elite to transport a cargo of fuel oil and marine diesel oil from Bahia Las Minas, Panama to Cristobal, Panama. *See* Owner's Pre–Hearing Memorandum, Exhibit 20 of Exhibits in Opposition to Motion to Vacate Award at 1. A dispute arose when samples of the marine diesel oil taken after the voyage reflected contamination by fuel oil. *Id.* This dispute was arbitrated pursuant to a charter party in front of a three member panel appointed by the AAA, which after eight days of hearings, unanimously awarded $409,532.87 to Texaco. *See* Verified Petition to Vacate Arbitration Award at ¶ 20.

■ The issue in contention here is whether an award to Texaco was proper,[1] because Texaco was not the owner of the contaminated cargo. The relationship between Texaco and Texaco Antilles, the ac-

---

1. There is no dispute that Texaco had standing to seek arbitration because the arbitration was brought pursuant to a charter to which Texaco was a party.

tual cargo owner, is set out in a Tanker Transportation Agreement (the "Tanker Agreement"), pursuant to which Texaco charters vessels for Texaco Antilles' petroleum products and Texaco Antilles pays freight to Texaco for each voyage.

██ Elite argued before the arbitrators that Texaco, since it did not actually own the cargo, could only be entitled to damages from Elite if it had an enforceable obligation to indemnify Texaco Antilles, an obligation which no longer existed because the applicable statute of limitations barred any claim by Texaco Antilles against Texaco.[2] Elite therefore contends that the arbitrators manifestly disregarded the law in not sustaining the statute of limitations defense which Texaco could have successfully asserted against Texaco Antilles and which *Caribbean Steamship v. Sonmez*, 598 F.2d 1264 (2d Cir.1979), also permits Elite to assert against Texaco.[3]

Texaco refuted Elite's contention before the arbitrators by arguing that any claim that Texaco Antilles might have against Texaco is governed by the six year statute of limitations for contract claims under New York law, and not the one year period set forth in COGSA. They therefore now contend that the arbitrators committed no error in finding that Texaco was entitled to an award, and certainly did not wilfully disregard the law.[4]

## DISCUSSION

██ To find that the arbitrators manifestly disregarded the law, there must have been "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 516 (2d Cir.1991) (citations omitted). *See Carte Blanche (Singapore) v. Carte Blanche Int'l*, 888 F.2d 260, 265 (2d Cir.1989); *Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930, 933–34 (2d Cir.1986); *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 892 (2d Cir.1985). The alleged error "must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator," and the governing law alleged to have been disregarded by the arbitrators must be "well defined, explicit, and clearly applicable." *Carte Blanche (Singapore) v. Carte Blanche Int'l*, 888 F.2d 260, 265 (2d Cir. 1989) (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930, 933–34 (2d Cir.1986). Tested by that standard, Elite has plainly failed to carry its burden of demonstrating that the arbitrators deliberately disregarded clearly applicable law. *See Fried, Krupp, GmbH v. Solidarity Carriers, Inc.*, 674 F.Supp. 1022 (S.D.N.Y.), *aff'd*, 838 F.2d 1202 (2d Cir.1987).

**2.** Elite's statute of limitations argument is based on the fact that the Tanker Agreement incorporates the terms of the "TEXACOVOY" form of charter party, which in turn incorporates the Carriage of Goods by Sea Act of the United States ("COGSA"). One provision of COGSA provides that all claims for loss or damage must be brought within one year after delivery, 46 U.S.C. § 1303(6), and more than one year had elapsed prior to the time that the claim was asserted.

**3.** Elite's memorandum of law also argues that the arbitrators, by awarding damages to Texaco, exceeded the scope of their authority in violation of 9 U.S.C. § 10(d) (1988), *as amended by* Act of Nov. 15, 1990, 9 U.S.C.A. § 10(a)(4) (Supp.1991). This argument is refuted by the broad language in the arbitration agreement, which refers to arbitration "any and all disputes of whatsoever nature arising out of this Charter." *See* Notice of Motion on Petition to Vacate Arbitration Award at Exhibit A. Since federal arbitration policy requires courts to "construe

arbitration clauses as broadly as possible," *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250 (2d Cir.1991) (quoting *S.A. Mineracao da Trindade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir.1984)), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), the arbitrators clearly did not exceed the scope of their authority in awarding Texaco damages. In any event, Elite waived this argument by submitting the real party in interest issue to the arbitrators, and indeed, by declining to accept the suggestion of the chairman of the panel to seek a stay of arbitration pending judicial resolution of the arbitrability of that issue.

**4.** *Caribbean Steamship* termed the type of claim that Texaco brought an accelerated indemnity claim and allowed it to be asserted so long as there was potential liability on the part of the indemnitor.

Elite did not present any case law to the arbitrators which clearly required a one year statute of limitations to be applied. Indeed, Elite's claim that COGSA's one year statute of limitations would apply to a claim between Texaco and Texaco Antilles was based upon an interpretation of a complex series of documents, which incorporate various contracts and documents by reference. Nowhere in any of these documents is it unquestionably evident that the COGSA one year statute of limitations applies so that "the average person qualified to serve as an arbitrator" could not have concluded otherwise. *Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d at 933. Since manifest disregard will generally only be found where the arbitrators " 'understood and correctly stated the law but proceeded to ignore it,' " *Fahnestock*, 935 F.2d at 516 (quoting *Siegel v. Titan Indus.*, 779 F.2d 891, 893 (2d Cir.1985), it follows that the arbitrators' decision to award Texaco damages by accepting Texaco's argument that a six year statute of limitations applies cannot be more than "a mere error in law or failure on the part of the arbitrators to understand or apply the law," *Saxis Steamship Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577, 582 (2d Cir.1967), assuming that any error was made at all.[5]

Elite further argues that the arbitrators were guilty of misbehavior and of exceeding the scope of their authority when they accused Elite of attempting to steal cargo by means of "surreptitious" piping. This contention borders on the frivolous. Elite's argument is based on isolated statements by the arbitrators which in fact were made to help clarify the potential source of contamination to the fuel. These statements can hardly be seen as beyond the scope of the arbitrators' authority, especially in light of the fact that the AAA commercial arbitration rules, to which the parties agreed to abide, allow the arbitrators to consider any evidence deemed "necessary to an understanding and determination of the dispute." *See* AAA Commercial Arbitration Rule 31. Indeed, the Second Circuit has stated that "a court must accord the 'narrowest of readings' to the 'excess of powers' provision of 9 U.S.C. § 10(d)." *Kerr–McGee Refining Corp. v. M.T. Triumph*, 924 F.2d 467, 471 (2d Cir.1991) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 703 (2d Cir.1978)).

Similarly, there is no merit to Elite's contention that the arbitrators prejudged the merits of the case simply because a statement was made that there is no doubt that contamination did occur, especially since the arbitrator did not express any opinion as to the cause of that contamination, and merely made this observation in an attempt to explain why the panel was inquiring further into the ship's piping layout. *See* Petition at Exhibit H, pp. 519–524.

■ Finally, Texaco claims it is entitled to attorneys' fees and costs with respect to the instant motion under Clause 27 of the charter party which provides that "[d]amages for breach of this Charter shall include all provable damages, and all costs of arbitration suit and attorneys' fees incurred in any action hereunder." *See* Petition at Exhibit A. Elite simply argues, without any support in the language of the charter agreement itself, that a dispute as to the arbitrators conduct is not within that clause. There is no merit to that argument. The language of the charter clearly supports Texaco's claim that attorneys' fees and costs are recoverable with respect to any action arising under that agreement.

## CONCLUSION

For the reasons given above, petitioner's motion to vacate the arbitration award is

---

**5.** Moreover, in claiming a manifest disregard of the law, Elite is assuming that the only ground for the arbitral award was the accelerated indemnity claim. This is not necessarily true. Another basis for the decision could have been that Texaco was entitled to recover in its own right based upon its relationship to Texaco Antilles. Indeed, Texaco presented arbitration cases to the panel wherein chartering affiliates were allowed to recover based upon their close relationship to the cargo owner. Regardless of whether these cases were correct statements of the law, the arbitrators' decision to follow them could likewise amount to no more than an error of law.

denied, and respondent's cross-motion to confirm the award is granted. The Clerk of the Court is directed to enter a judgment accordingly and to close the above-captioned action.

It is SO ORDERED.