In the Matter of ARBITRATION BETWEEN CARINA INTERNATIONAL SHIPPING CORP., as Owner of the M/T Sobral, Petitioner,

and

ADAM MARITIME CORP., as Voyage Charterer, Respondent.

No. 96 Civ. 5527(SS).

United States District Court, S.D. New York.

March 27, 1997.

Haight, Gardner, Poor & Havens, Mark C. Flavin, James H. Hohenstein, New York City, for petitioner Carina International Shipping Corp.

Piper & Marbury, L.L.P., James D. Kleiner, New York City, for Respondent/Cross–Petitioner, Adam Maritime Corp.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

Petitioner Carina International Shipping Corporation ("Carina") moves, pursuant to 9 U.S.C. §§ 1 and 9, to confirm an arbitration award ("the Award") rendered in its favor on June 26, 1996. Respondent Adam Maritime Corporation ("Adam") cross-moves, pursuant to 9 U.S.C. § 10, to vacate the Award. For the reasons to be discussed, the motion to vacate the Award is **DENIED**, and the motion to confirm the Award is **GRANTED**.

## BACKGROUND

Carina owns the MT SOBRAL ("the vessel"), a charter vessel. On May 28, 1993, Carina entered into a charter party contract with Adam, chartering the vessel for one voyage to carry a full cargo of clean unleaded petroleum products, including caustic soda, from a port or ports in the United States to a port or ports in South America. Subsequently, disputes arose concerning demurrage claims [1] and Carina sought arbitration in accordance with the arbitration clause (Clause 23) of the Charter Party Contract.

The demurrage dispute occurred in the following context. On June 9, 1993, Adam ordered the vessel to proceed to the Oiltanking Terminal in Houston to load naptha and methyl butyl ether ("ether") for discharge at La Pampilla, Peru. Later, Adam issued instructions for the vessel to proceed—prior to the vessel's final discharge in Peru—to Corpus Christi upon completion of the loading of

the naptha and ether in order to load caustic soda for discharge at Buenaventura, Colombia. The vessel arrived in Houston on June 10, with loading of the ether commencing on June 11. While loading the ether, the vessel was arrested by a third party, forcing the cessation of loading. On June 12, loading resumed and continued until the ether was completely loaded.

Approximately one half-hour after completion of the ether cargo loading, the terminal ordered the vessel off the berth, allegedly to allow Carina to resolve "judicial problems." The vessel proceeded to the Houston anchorage and remained there until Adam instructed her to reberth at the oil tanking facility in preparation for the loading of the naptha cargo on June 15, 1993. The vessel made her way to the berth, but subsequently returned to anchorage. During the period in which it was unclear when the vessel would return to berth, Adam began making plans for another vessel to load the naptha and transship the ether. However, on learning that the M/T SOBRAL would be returning to the terminal, the other vessel was not chartered.

The vessel reberthed on June 16, 1993, and commenced loading the naptha. On June 17, Adam informed Carina that the caustic soda, now to be loaded in Houston, would not be available until at least June 19, and that other arrangements needed to be made for the transport of the caustic soda. Loading of the vessel was completed on June 18, and it set sail for Peru that day.

The vessel arrived in Peru on June 29, 1993, and discharge of the ether commenced that night. On July 1, the Peruvian receivers ordered the vessel out of the berth and to anchorage (allegedly because of slow pumping on the part of the vessel). The vessel remained at anchorage from July 1 to July 8. It commenced discharging the naptha on July 9 and completed the discharge on July 10. Carina's arbitration claim for demurrage followed.

The arbitration panel held hearings, requested briefs from the parties, and a major-

---

1. A demurrage claim is a claim for the time a vessel is detained beyond the loading or unload-

ing time agreed upon by the parties in their contract.

ity of the panel awarded Carina demurrage in the amount of $144,385.83. Carina had appointed the dissenting arbitrator. The dispute in this confirmation proceeding involves that portion of the arbitration award to Carina for damages of approximately $56,309.65 or three days, twenty-one hours, and twelve minutes of demurrage while the vessel was at anchorage in Houston. Adam contends that it is not liable for the $56,309.65 of demurrage, because the delays were incurred as a result of Carina's financial troubles. Carina originally submitted a demurrage claim in the arbitration in the amount of $142,291.40. This computation excluded time that the vessel was arrested at the berth in Houston and the three days, twenty-one hours, and twelve minutes under dispute (hereinafter "the re-berthing delay"). Subsequently, Carina increased its claim to $156,790 because of an arithmetical error in its original computation. In February 1996, after the close of the evidentiary hearings, Carina amended its claim to $213,099.65 to include the re-berthing delay.

Adam contended before the arbitrators that the re-berthing delay claim by Carina was a new dispute not subject to consideration by the arbitration panel because of Clause 24 of the Charter Party which permits new claims to be raised only until the close of evidentiary hearings. Carina argued that the re-berthing delay claim was not a new dispute, but rather an amendment of its original demurrage claim which the arbitrators were empowered to permit under the Maritime Arbitration Rules of the Society of Maritime Arbitrators (the "SMA Rules"). The awarding panel agreed with Carina and ultimately awarded it demurrage for the re-berthing delay.

### DISCUSSION

### I. Standard of Review

■ On a confirmation motion, judicial review of an arbitral award is rather narrow, and is limited to determining whether the arbitrators acted within the scope of their authority in rendering the award. *See United-ed Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36–37, 108 S.Ct. 364, 369–70, 98 L.Ed.2d 286 (1987); *Local 1199, Drug, Hosp.*

*& Health Care Employees Union v. Brooks Drug Co.,* 956 F.2d 22, 24 (2d Cir.1992). A court may not second-guess the merits of the award. *See Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953); *Brooks,* 956 F.2d at 25. An arbitral award must be confirmed unless: (1) one of the statutory exemptions listed in 9 U.S.C. § 10 applies; (2) the arbitrators acted in manifest disregard of the law; or (3) the arbitral award is incomplete, ambiguous, or contradictory. *See* 9 U.S.C. § 10; *Transit Casualty Co. v. Trenwick Reinsurance Co.,* 659 F.Supp. 1346, 1350 (S.D.N.Y.1987), *aff'd without opinion,* 841 F.2d 1117 (2nd Cir. 1988). As noted in *Blue Bell, Inc. v. Western Glove Works Ltd.,* 816 F.Supp. 236 (S.D.N.Y. 1993):

> A party seeking to overturn an arbitration award is under a heavy burden to prove that the standards for such relief have been met, especially since it is the Second Circuit's policy to read very narrowly the courts' authority to vacate arbitration awards pursuant to Section 10[a] of the FAA. *Blue Tee Corp. v. Koehring Co.,* 808 F.Supp. 343 (S.D.N.Y.1992); *John T. Brady & Co. v. Form–Eze Systems, Inc.,* 623 F.2d 261, 264 (2d Cir.), *cert. denied,* 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980); *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 703 (2d Cir.1978). Any "colorable justification" will support an arbitral award. *Fahnestock & Co., Inc. v. Waltman,* 935 F.2d 512, 516 (2d Cir.1991); *In re Marine Pollution Serv., Inc.,* 857 F.2d 91, 94 (2d Cir.1988).

*Blue Bell, Inc.,* 816 F.Supp. at 240 (citation omitted).

■ The Second Circuit has stated that "[i]f there is 'even a barely colorable justification for the outcome reached,' the court must confirm the arbitration award." *Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 13 (2d Cir. 1997) (quoting *Andros Compania Maritima, S.A.,* 579 F.2d at 704).

### II. Arbitrator's Authority Under the Contract and 9 U.S.C. § 10(a)(4)

■ An arbitral award may be vacated on the grounds that "the arbitrators exceed-

ed their powers." 9 U.S.C. § 10(a)(4). The appropriate test for ascertaining whether an arbitrator has exceeded his or her authority is to "determine first whether the arbitrator acted within the scope of his authority, and second whether the award draws it essence from the agreement or is merely an example of the arbitrator's own brand of justice." *Brooks*, 956 F.2d at 25. As stated in *Synergy Gas Co. v. Sasso*, 853 F.2d 59 (2d Cir.), *cert. denied*, 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988), "the 'scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission.'" *Id.*, 853 F.2d at 63–64 (quoting *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987), *cert. denied*, 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988)). If it is clearly established that the arbitrator has exceeded his authority, or imposed his or her own brand of justice, then the award cannot stand. *See Brooks*, 956 F.2d at 25.

Adam argues that by allowing Carina to submit the re-berthing delay claim after the evidentiary hearings had closed, "the panel majority violated the express terms of the contract upon which their jurisdiction is based and thus violated 9 U.S.C. § 10(a)(4), which provides for the vacation of [sic] arbitral award where the arbitrators 'exceeded their powers.'" (Resp.'s Mem. at 7.)

Adam maintains the Clause 24 of the Charter Party precluded the arbitrators from permitting Carina to raise a new claim for demurrage after the evidentiary hearings at the arbitration closed. Clause 24 provides that "[u]ntil such time as the arbitrators finally close hearings either party shall have the right by written notice served on the arbitrators and upon any other officer of the other party to specify further disputes or differences under this Charter for hearing and determination." (Charter Party, Clause 24.)

Adam further contends that the arbitrators, by permitting the new demurrage claim, ignored the clear limitations of Clause 17 of the Charter Party. Rider Clause 17 provides that:

> In order to be honored, any demurrage claim must be received in writing with full supporting documents including authorized statements of facts signed by Master, Suppliers/Receivers/Agents within 90 days of completion of discharge failing which the claim shall be deemed to be waived and absolutely barred.

(Answer to Amended Pet., Ex. 2).

Carina submitted to Adam a demurrage statement dated July 15, 1993 and a port log with a statement of facts, within the 90 day period required by Clause 17 (Exhs. 8 and 9 to the Amended Petition to Confirm the Award). The demurrage statement, however, did not include a laytime calculation by Carina for the re-berthing delay.

In the Award, the awarding panel considered and rejected Adam's argument that the re-berthing delay claim was a new claim. The awarding panel stated that it did "not look with a kindly eye on [Carina's] last minute amendment, [but believed that] ... the increased claim is still timely." (*See* Final Award at 16, Answer to Amended Pet., Ex. 1 (hereinafter "Final Award")). The panel also determined that the July 15, 1993 demurrage statement met the requirements of Clause 17:

> All the documentation required under the charterparty had been furnished to the Charterer in July of 1993. The increase sought merely amended the amount of time to be included as demurrage. The documents previously submitted would have been the same irrespective of whether the time spent at the anchorage was included or not.

(Final Award at 16).

As was the dissenting arbitrator of the arbitration panel, this Court is extremely troubled by the decision of the majority of arbitrators to allow Carina's last minute modification of its claim. (*See* Final Award, App. B, at 4,). Much evidence exists that Carina had affirmatively, prior to the submission of its post-hearing briefs, waived its demurrage demand for the re-berthing delay.

■■■ In a confirmation proceeding, however, a court may not second-guess the merits of an award. *See Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *Brooks*, 956 F.2d at 25; *Chios Charm Ship-*

*ping Co. v. Rionda,* No. 93 Civ. 6313(SS), 1994 WL 132141 at *3 (S.D.N.Y. Apr.12, 1994). A court cannot interfere with an arbitrator's award so long as it "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). As noted previously, an arbitrator's award need only satisfy a minimal threshold, and a "barely colorable justification for the outcome reached" by an arbitrator is sufficient to withstand challenge. *Meyers v. Parex, Inc.* 689 F.2d 17, 19 (2d Cir.1982) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.,* 579 F.2d 691, 704 (2d Cir.1978)). So long as the arbitrator arguably construes or applies the contract, an award cannot be vacated because a court disagrees with the award's factual findings or its interpretation of the contract. *Misco,* 484 U.S. at 36–37, 108 S.Ct. at 369–70 (a court may not reject an arbitrator's factual findings simply because the court disagrees with them, nor may a court reject an award because the arbitrator "misread the contract"); *Radio & Television Broadcast Engineers Union, Local 1212 v. WPIX, Inc.,* 716 F.Supp. 777, 780 (S.D.N.Y.) (same), *aff'd,* 895 F.2d 1411 (1989).

■■■ An arbitrator's authority, however, is at all times restricted by the parties' agreement. *See Harry Hoffman Printing, Inc. v. Graphic Communications Int'l Union, Local 261,* 950 F.2d 95, 98 (2d Cir.1991). An arbitrator's interpretation and application of the agreement must be based on the explicit terms of the agreement. Thus, "the arbitrator cannot disregard or modify unambiguous contract provisions." *Inter–City Gas Corp. v. Boise Cascade Corp.,* 845 F.2d 184, 187 (8th Cir.1988). *See also Blue Circle Atlantic, Inc. v. Independent Workers of North America,* 90 CV 410, 1990 WL 120948, *3 (N.D.N.Y.1990) (citing *Inter–City,* 845 F.2d at 187 and *District No. 72 & Local Lodge 1127, Int'l Ass'n of Mach. & Aerospace Workers v. Teter Tool & Die, Inc.* 630 F.Supp. 732, 736 (N.D.Ind.1986)) (arbitrator is bound by unambiguous terms of the collective bargaining agreement and acts without authority if the arbitrator alters or amends the agreement). The Supreme Court, never-

theless, has held that while an arbitrator cannot ignore the plain language of the contract, "the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract." *Misco,* 484 U.S. at 38, 108 S.Ct. at 371.

■■■ After careful review of the Award, I find there is a "colorable justification" for the Award, grounded in the essence of the contract, and for this reason I affirm the panel majority's findings. *See Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 13 (2d Cir.1997) ("If there is 'even a barely colorable justification for the outcome reached,' the court must confirm the arbitration award.").

By agreement of the parties, this arbitration was conducted under the Maritime Arbitration Rules of the Society of Maritime Arbitrators ("SMA Rules"). The SMA Rules specify that "[t]he parties shall be free to amend or add to their claims until the proceedings are closed pursuant to Section 25." (SMA Rules, Part III, Section 6. Initiation Under an Arbitration Agreement.) Section 25 states that "[u]pon completion of submission of evidence, the parties may submit briefs on an agreed schedule.... Once *all submissions* are completed, the Chairman shall declare the proceedings closed." (SMA Rules, Part V, Section 25. Closing of Proceedings) (emphasis added).

Clause 24 of the Charter Party does not define what constitutes a "new claim." Neither do Sections 6 or 25 of the SMA Rules define what constitutes an "amendment" to a claim. Similarly, although Clause 17 requires a demurrage claim to be "in writing with full supporting documents including authorized statements of facts signed by Master," the Clause neither expressly prohibits amendments nor does it define what constitutes "full supporting documents." Here, Carina submitted to Adam a port log containing a statement of facts within the 90 day period required by Clause 17. The port log does not reflect the re-berthing delay time, but as Carina points out "[t]here is a simple reason that the period of time under dispute

is not addressed in the port log, as at that time the vessel was at anchorage (having been directed off the berth by the terminal) and thus it is logical that the time is not reflected in the log. By definition, a port log records events which occur in port, and does not reflect passive events at anchorage." (Hohenstein Let. to Court, 3/4/97). Even though it did not reflect a calculation of laytime for the re-berthing delay, the July 13, 1993 demurrage statement did describe the vessels whereabouts during the re-berthing delay time.

Amendments to demurrage claims in situations similar to this one have been permitted in other arbitration proceedings. *See, e.g., Inna Wakili,* SMA 2698, at 16 (Jacobson, 1990) (where charter party contained clause similar to instant Rider Clause 17, arbitrator permits "revised calculation" of demurrage, even where revised calculation was "presumably presented for the first time in counsel's brief."), *aff'd on other grounds,* 1992 WL 84536 (S.D.N.Y.) (Leval, J.); *Botany Treasure,* SMA 2363 (Bulow, Cederholm and Curtin, 1987) (accepting revised demurrage claim). Under these circumstances, I conclude that the arbitrators had a "colorable justification" for their Award, giving meaning to ambiguous terms of the contract grounded in the essence of the Charter Party and SMA Rules. Accordingly, the awarding panel did not exceed its powers and violate 9 U.S.C. § 10(a)(4).

## III. Refusal to Permit Discovery, Hear Evidence, and 9 U.S.C. § 10(a)(3)

■■■■ "All parties in an arbitration proceeding are entitled to notice and an opportunity to be heard." *Konkar Maritime Enterprises, S.A. v. Compagnie Belge D'Affretement,* 668 F.Supp. 267, 271 (S.D.N.Y. 1987) (quoting *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.,* 607 F.2d 649, 651 (5th Cir.1979)). "Where a party to an arbitration does not receive a full and fair hearing on the merits, a district court will not hesitate to vacate the award." *Konkar Maritime Enterprises, S.A.,* 668 F.Supp. at 271 (holding that an arbitration award will not be vacated pursuant to

§ 10(a)(3) where the respondent received notice and a fundamentally fair hearing).

■■■ Adam argues that "the Panel majority committed reversible error by rendering their Award without first re-opening the hearings to permit Adam—in line with objections as stated and understood by the Panel—to pursue discovery on the New Claim and further prepare and present its case." (Resp.'s Mem. at 10.) Adam appears to be arguing that "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy. . . ." 9 U.S.C. § 10(a)(3).

The awarding panel was clearly cognizant of Adam's argument that the re-berthing delay claim was a "new claim," barred both by Clauses 24 and 17 of the Charter Party. (Charter Party Rider Clause 17). As discussed previously, the awarding panel, however, rejected Adam's argument, finding "it difficult to accept [Adam's] arguments both in support of its affirmative claims and against the demurrage liability, as to how its arguments would have been altered had [Carina] originally claimed for the time at the Houston anchorage [the re-berthing delay claim]." (Final Award at 16–17). Moreover, the awarding panel noted that if Adam had "felt truly prejudiced it could have requested the opportunity to present additional evidence, *but it failed to do so."* (*Id.* at 17) (emphasis added).

Adam argues that the proceedings were procedurally unfair, because the awarding panel granted the new demurrage claim without discovery and an evidentiary hearing. Yet, it was Adam itself who failed to ask the arbitrators to permit it discovery or to reopen the hearings. SMA Rule 26 expressly provides that "[a]t any time prior to the issuance of an Award, hearings may be reopened on the application of any party provided that Panel agrees that good cause has been shown." Adam could have argued that the "new claim" was good cause to permit discovery and re-open the hearing. Instead, Adam made a conscious tactical choice not to ask to reopen the hearings but instead to rely upon the argument that Clauses 17 and 24 precluded the new claim:

THE COURT: You know, Mr. Kleiner, my problem is, given your current description to me, that you want the arbitrators to read in between the lines.... You want them to read between the lines and sua sponte decide that they don't want to be bothered with reopening the hearing or getting into a new factual controversy. But you never asked them for more discovery. You never asked them to reopen the hearings. I am not quite sure what you were thinking. Perhaps you were thinking that your argument was so persuasive that you didn't have to bother to ask.

MR. KLEINER: Your Honor, to ask for hearings and nothing more would have been to waive my stronger argument, in my opinion, that the right to—

THE COURT: Why haven't you waived your weaker argument by failing to raise it? It sounds to me like you took a calculated risk that you were weakening your stronger argument.

MR. KLEINER: On the contrary, your Honor, in logic, if we're saying to the arbitrators this claim, the right to interpose the new claim for delay has expired under clause 24, it would be inconsistent for me not to argue and instead require the panel instead to open the hearings and hear the new claim. My position was the right to interpose the new claim has expired.

THE COURT: We do alternative pleadings here and in arbitration. You are not going to suggest to me that arbitrators are incapable of understanding alternative requests?

MR. KLEINER: Your Honor, I mean the point is taken.

THE COURT: You accept that proposition.

MR. KLEINER: I accept not only the proposition, but the reason why you raise it here, your Honor, I could have set forth a formalistic pleading to the arbitrators....

(2/21/97 O.A. Tr. at 11–13).

By its own tactical choice, Adam waived the right to argue that the awarding panel committed misconduct under 9 U.S.C. § 10(a)(3) by not re-opening the evidentiary hearings. Adam had a full opportunity to invoke its rights under SMA Rule 26 and choose not to do so.[2] *See Carte Blanche (Singapore) Pte. Ltd. v. Carte Blanche Int'l Ltd.,* 683 F.Supp. 945, 955 (S.D.N.Y.1988) (providing that objections should be made before arbitration is completed and confirmation is sought in court) (citing *Swift Indep. Packing Co. v. District Union Local One,* 575 F.Supp. 912 (N.D.N.Y.1983), *aff'd,* 888 F.2d 260 (2d Cir.1989); *La Societe Nationale Pour La Recherche, La Production, Le Transport, La Transformation et la Commercialisation Des Hydrocarbures v. Shaheen Natural Resources Co., Inc.,* 585 F.Supp. 57, 62–65 (S.D.N.Y.1983) (party must raise procedural objection before panel or it is waived), *aff'd,* 733 F.2d 260 (2d Cir.), *cert. denied,* 469 U.S. 883, 105 S.Ct. 251, 83 L.Ed.2d 188 (1984)). Having lost its legal arguments under Clauses 17 and 24, a confirmation proceeding is not the place for Carina now to argue that the arbitrators failed to provide a procedurally fair hearing when Carina never asked for discovery or a re-opening or the hearings.

## IV. Arbitrator Misconduct and 9 U.S.C. § 10(a)(3)

■ A party seeking to overturn an arbitral award is under a heavy burden to prove arbitrator misconduct under 9 U.S.C. § 10(a)(3), because under Section 10 of the

---

**2.** Mr. Kleiner's post-award discussions with Mr. Besman, a member of the majority panel, (rather than revealing any impropriety, as Mr. Kleiner alleges), reveal that had Adam not waived its right to request a reopening of the hearings, a majority of the panel, composed of Mr. Besman and the award dissenter might well have re-opened the hearing. (*See* Answer to Amended Pet., Exs. 27, 28, 29). In a letter to the other panel members after the award, Mr. Besman wrote that he had indicated to Mr. Kleiner his "personal view (not as Panel Chairman) ... that in the interests of justice if the Panel was not 'functus officio' [he] would be sympathetic to" reopening the hearing. (*Id.*, Ex. 29, Let. from Besman to Berg and Jacobson, 7/15/96). Clearly, rather than showing, as Adam alleges, that Besman was biased against Adam and its interests, this letter reveals that even post-award Mr. Besman was open-minded about, if not accommodating to, Adam's position.

Federal Arbitration Act (FAA) a court's authority to vacate an arbitration award is very narrowly construed. *See Andros Compania Maritima, S.A.*, 579 F.2d at 703.

■ Adam contends that in the "circumstances of this case, it is reasonable to infer that Mr. Besman, [one of the awarding arbitrators] who admittedly had financial problems and was keen to expedite payment of his fee, permitted that consideration to motivate his decision not to reopen the hearings." (Resp.'s Mem. of Law at 14.) Even accepting that the chairman of the panel acted in unseemly haste to be paid his fee, Adam's statements that financial need motivated the arbitrator's award is at best conclusory. The arbitrator could have just as quickly accepted Adam's arguments that the demurrage recalculation was untimely and refused to consider the claim. Adam does not explain how the arbitrator's alleged financial need compelled or persuaded him to rule in one way or another on the disputed issue. Therefore, Adam's arguments about the arbitrator's motivations are speculative and do not come close to satisfying the heavy burden required to vacate an arbitral award.

## V. Arbitrator Partiality and 9 U.S.C. § 10(a)(2)

Adam further contends that its "initial acceptance of Mr. [Lawrence] Jacobson, [the other majority panel member] based on his disclosures, was in the good faith expectation that he would faithfully and fairly discharge his undertaking and oath as an Arbitrator." (Resp.'s Reply at 9.) Adam contends that the Award should be vacated under 9 U.S.C. § 10(a)(2)—which permits vacatur of an award where "there was evident partiality or corruption in the arbitrators, or in either of them"—because Jacobson, a member of the arbitration panel, was a former associate of Haight, Gardner, Poor, & Havens—the firm representing the petitioner, Carina. (*See* Kleiner Decl. at 5).

It is undisputed that Jacobson was an associate with Haight Gardner for approximately 18 months in the late 1970s. It also undisputed that Jacobson disclosed this information to the parties, after his nomination by Carina, but before the commencement of the proceedings. Adam did not challenge Jacobson's participation on the panel, however, until after the issuance of the Award.

■ An arbitration award may be vacated upon a finding of "evident partiality," which exists "'where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.'" *Local 814, Int'l Bhd. of Teamsters v. J & B Systems Installers & Moving, Inc.*, 878 F.2d 38, 40 (2d Cir.1989) (quoting *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir.1984)). Courts should consider the totality of the circumstances in deciding the existence of evident partiality, because proof of actual bias or "outright chicanery" is often impossible to obtain. *See Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 150–51, 89 S.Ct. 337, 340, 21 L.Ed.2d 301 (1968) (White, J., concurring); *Morelite*, 748 F.2d at 84; *U.S. v. International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL–CIO*, 814 F.Supp. 1165, 1175 (S.D.N.Y.1993). The relevant factors in determining "evident partiality" are: (1) peculiar commercial practices in the geographic area; (2) an arbitrator's financial interest in the arbitration; (3) the nature of the relationship between the arbitrator and the alleged favored party; and (4) whether the relationship existed during the arbitration. *See Morelite*, 748 F.2d at 84; *International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL–CIO*, 814 F.Supp. at 1175.

■ Examining these standards of "evident partiality," it is clear that Jacobson did not engage in misconduct and that there is no basis for vacatur of the award under 9 U.S.C. § 10(a)(2). Adam has not demonstrated, nor can I ascertain, any financial interest that Jacobson had in this arbitration. While Haight Gardener and Jacobson were formerly in an employer-employee relationship, that relationship had ended over a decade before the arbitration. Jacobson disclosed to the parties before the arbitration commenced that he had retained the services of Haight Gardener in the past to represent the interests of members of a shipping asso-

ciation he represented. He also disclosed that Haight Gardener had represented clients whose interests were adverse to those of the members of the same shipping association. It is unknown whether Haight Gardener was representing any members of the association during the arbitration, but this information could have been discovered by Adam if it had accepted Jacobson's invitation to answer any relevant questions regarding his disclosures when he made them.

■ In short, Jacobson made full disclosure to the parties and Adam waived any objection to Jacobson's service. Merely because the award was not in its favor, is not a reason to conclude that Jacobson was biased. *Cf. RAS Securities Corp. v. Williams,* Index No. 600895/97, *slip op.,* at 4 (S.Ct.N.Y.1997) ("Acquaintanceship alone is certainly no basis for a finding of bias.") (citing cases); *Liteky v. United States,* 510 U.S. 540, 554, 114 S.Ct. 1147, 1156–57, 127 L.Ed.2d 474 (1994) ("Judicial ruling alone almost never constitute a valid basis for a bias or partiality motion. . . .").

## VI. Attorneys' Fees

Clause 23 of the Charter Party between Carina and Adam states that "[d]amages for breach of this Charter shall include all provable damages, and all costs of suit and attorney fees in any action incurred in any action hereunder." (Charter Party, Clause 23.) Courts construing language almost identical to Clause 23 have found that such clauses require the award of court costs and reasonable attorneys' fees to the successful party bringing the confirmation proceeding. *See Elite, Inc. v. Texaco Panama Inc.,* 777 F.Supp. 289, 292 (S.D.N.Y.1991) ("The language of the charter clearly supports [the claim of the party seeking confirmation] that attorneys' fees and costs are recoverable with respect to any action arising under that agreement."); *Trans–Asiatic Oil Ltd. S.A. v. UCO Marine Int'l Ltd.,* 618 F.Supp. 132, 137 (S.D.N.Y.1985) (awarding all court costs and reasonable attorneys' fees—pursuant to a contractual clause similar to Clause 23—to the party seeking confirmation of an arbitral award). Pursuant to Clause 23 of the Char-

ter Party, I also award all court costs and reasonable attorneys' fees to Carina.

### CONCLUSION

For the reasons set forth above, the motion to vacate the Award is **DENIED**, and the motion to confirm the Award is **GRANTED**. The parties are to confer and attempt to submit by April 11, 1997, an agreed upon proposed judgment to the Court. If the parties cannot agree upon a proposed judgment, they should advise the Court of the basis for their disagreement and submit alternate proposed judgments.

**SO ORDERED.**